334 So.2d 355 (1976)
The DEPARTMENT OF ADMINISTRATION of the State of Florida, and Robert L. Kennedy, Jr., Executive Director of the Division of Retirement, Department of Administration, Appellants,
v.
G.L. BROWN et al., Appellees.
No. Z-27.
District Court of Appeal of Florida, First District.
May 24, 1976.
Rehearing Denied July 21, 1976.
*356 David V. Kerns and L. Keith Pafford, Tallahassee, for appellants.
James E. Messer and Cass D. Vickers of Thompson, Wadsworth, Messer, Turner, & Rhodes, Tallahassee, for appellees.
McCORD, Judge.
This is an appeal from a summary final judgment in favor of appellees (plaintiffs below) in a declaratory judgment action. The suit below involved the question of whether or not appellees, employees of the Division of Corrections of the State of Florida (and others similarly situated as a class) are entitled to be approved by the Executive Director of the Division of Retirement, Department of Administration, for special risk member status within the Florida Retirement System as "correctional agency employees whose duties and responsibilities include contact with inmates, but excluding secretarial and clerical employees." The trial court ruled that appellees were entitled to such approval and granted summary judgment. Appellants (the Department of Administration of the State of Florida, and Robert L. Kennedy, Jr., Executive Director of Division of Retirement, Department of Administration) contend that the trial court's interpretation of the statue governing such special risk membership, § 121.021(15), Florida Statutes, was erroneous and that the court erred in entering summary judgment.
The trial court's ruling was based upon § 121.021(15), Florida Statutes 1973. Subsequently, that statute was amended by Chapter 75-248, Laws of Florida, which now is § 121.021(15), Florida Statutes 1975. In rendering our decision, we will consider the law as it exists at this time rather than at the time the judgment was entered. See Florida East Coast Railway Company v. Rouse, Fla., 194 So.2d 260 (1967); Phillips v. Phillips, Fla.App. (1st), 287 So.2d 149 (1973).
§ 121.021(15), Florida Statutes 1975, provides as follows:
"(15) `Special risk member' means any officer or employee whose application is approved by the administrator and who receives salary payments for work performed as a peace officer; law enforcement officer; policeman; highway patrolman; custodial employee at a correctional or detention facility; correctional agency employee whose duties and responsibilities involve direct contact with inmates, but excluding secretarial and clerical employees; fireman; or an employee in any other job in the field of law enforcement or fire protection if the duties of such person are certified as hazardous by his employer."
As compared with regular members of the Florida Retirement System, special risk members may retire at a normal age of 55 with a higher retirement credit of 3% per year of service to make the earlier retirement meaningful. Regular members, on the other hand, must wait until age 62 to retire without penalty and receive only 1.6% to 1.68% retirement credit per year of service.
*357 In furtherance of their interpretation of the statute, appellants have adopted Rule 22B-1.05C governing the Director's (the Administrator's) approval of applications for classification of special risk membership. This rule states as follows:
"C. The criteria which shall be used by the employer and the Administrator in determining that a member shall be classified as a special-risk member are:
1. It must first be determined that the member falls into the category of peace officer, law enforcement officer, policeman, highway patrolman, custodial job in a correctional or detention facility, correctional agency employee whose duties and responsibilities involve direct contact with inmates (but excluding secretarial and clerical employees), fireman, or any other job in the field of law enforcement or fire protection.
2. Once it is determined that the member falls into one of the categories enumerated in (1), the member's duties shall be considered hazardous and the member classified as special risk if in the judgment of the Administrator, continued performance of the primary duties and responsibilities of the member beyond the normal retirement age for a special-risk member will constitute a hazard to the public and the member's fellow workers or will jeopardize the physical or mental well-being of the member, or at least one of the following statements applies to the member:
a. The duties and responsibilities of the member require that he regularly bear a firearm or other weapon.
b. The member in the performance of his primary duties and responsibilities is required to apprehend and arrest law violators or suspected law violators.
c. The primary duty and responsibility of the member is to maintain physical custody of prisoners within a prison or detention facility or while being transported.
d. The duties and responsibilities of the member require the fighting of fires, other than controlled fires set for instructional purposes."
The question presented to the trial court and presented here is whether or not the Administrator has authority to restrict special risk membership approval of a correctional agency employee whose duties and responsibilities involve direct contact with inmates (who is not a secretarial or clerical employee) to employees whose duties the Administrator finds to be hazardous. The trial court ruled that he did not. We disagree.
To understand the meaning of the current statute, we must consider the history of the "special risk" member category from the time the Florida Retirement System was first created in 1970. There the statute, § 121.021(15), Florida Statutes, 1971, was in the following form:
"(15) `Special risk member' means any officer or employee receiving salary payments for work performed as a peace officer, law enforcement officer, policeman, highway patrolman, custodial employee at a correctional or detention facility, fireman, or any other job in the field of law enforcement or fire protection if the duties of such person are certified as hazardous by his employer and approved by the administrator."
It should be noted that the various categories of special risk membership in the above statute are divided by commas and the final phrase requires that the duties of the person be certified as hazardous by his employer and approved by the Administrator. From the foregoing wording and punctuation, it is clear that the duties of each employee must be approved by the Administrator as hazardous. In 1972 the statute was amended to add correctional agency employees to the special risk definition of the Florida Retirement System. The statute was in the same form as the 1970 enactment and carried the additional *358 correctional agency employee category, each category being separated by commas as before. In addition the amendment added the following additional language:
"In the event any member or group of members seeks to be classified as special risk members and their employer fails to certify their duties as hazardous or that their positions fall within the definition of the special risk category established herein or if the administrator fails to concur in the certification of an employer with respect to the member's eligibility to participate as special risk members, such member or group of members may appeal to the career service commission for a hearing on the merits of their case. The decision of the career service commission shall be final and binding on all parties to the dispute."
The foregoing amendment was Chapter 72-388, Laws of Florida. In incorporating this amended definition of "special risk member" into the statutory revision (1972 Supplement to the 1971 Statutes), the statutory revision and indexing division of the joint legislative management committee substituted semi-colons for the commas appearing between each of the special risk categories, thus, lending the appearance that the Administrator might only have authority to consider the question of hazardous duties in relation to the last category. The semi-colons also appeared in the 1973 statutory revision. These semicolons, however, could not become effective until publication of the 1975 Statutes. (See § 11.2424, Florida Statutes 1973, and the explanation contained in the preface to Florida Statutes 1973, page vii, and Chapter 75-169, Laws of Florida.) Prior to the compilation of the 1975 statutory revision, the statute with which we are now concerned was amended by Chapter 75-248, Laws of Florida, which is included in the 1975 statutory revision as § 121.021(15), Florida Statutes 1975, as heretofore quoted in this opinion. That amendment separated the various categories of special risk members by semi-colons but makes approval by the Administrator an initial requirement for such membership.
Prior to this 1975 amendment, the Circuit Court of the Second Judicial Circuit denied a petition for mandamus which had been brought against appellants in the case sub judice ruling as follows with regard to this same statute as it existed prior to the 1975 amendment:
"It is the Court's view that said statute requires an exercise of discretion by the Administrator on whether or not the duties of the particular applicant are hazardous. This is a determination he must make based upon the facts of the particular case and his approval or certification is therefore not a mere ministerial act."
This court affirmed the ruling of the Circuit Court in Bross v. State, Fla.App. (1st), 277 So.2d 36 (1973).
We consider from the wording and history of this special risk category that the legislature intended that the Administrator of the Retirement System exercise reasonable discretion in determining whether or not members falling within the above categories exercise duties which are hazardous and thus entitle them to special risk membership. It is illogical to contend as do appellants that the legislature intended that every member who falls within a special risk category, other than the last one mentioned in the statute, is entitled to special risk membership regardless of whether or not he is performing hazardous duties. We cannot ascribe such an intent to the legislature. We do not believe, for example that the legislature intended that a desk sergeant in a sheriff's office who performed no other duties would be automatically entitled to special risk membership.
Reversed and remanded for further proceedings not inconsistent herewith.
*359 LEE, THOMAS E., Associate Judge, concurs.
ENGLAND, J., dissents.
ENGLAND, Judge, dissenting.
I respectfully disagree with the majority's conclusion that the Department of Administration ("Administration") has discretion under Section 121.021(15), as originally enacted or as set out in the most recent compilation of Florida Statutes, to impose a requirement of "hazard" on each category of state personnel enumerated in the applicable statutory provision. I readily concede that the original enactment and its subsequent revision can be read to support the majority opinion. It also can be read, perhaps more persuasively, to support a contrary view.
That portion of the act with which we are concerned states with more than adequate specificity the class of employees who are to be eligible for special risk membership. Those covered are non-clerical, nonsecretarial employees of correctional agencies who have direct job-related contact with institutional inmates. Surely more precision is not required to classify the persons includable and excludable. Had the Legislature intended to impose a condition of hazard on the class beyond that inherent in those covered in the class, it would have said so.[1]
The foregoing analysis suggests to me that the statute is clear and can be applied as read. Conceding, however, that it may be ambiguous, I still do not find authority for Administration to exercise the classification discretion it sought to impose by rule. I am not persuaded by the majority's view that the punctuation in the original act, or indeed in any subsequent revision, provides guidance. Nor do I find any clear legislative history to which we can turn. I find relevant, however, policy considerations relative to responsibilities within the executive branch of government.
First, I am persuaded that Administration has not been given classification discretion in light of the intergovernmental relationship between it and the other agencies of government whose employees are enumerated in Section 121.021(15). The statute contemplates a certification of employees by their respective department heads, which suggests a legislative intention to repose classification responsibility within each of the agencies having "special risk" personnel.[2] In this statutory framework, I perceive the need for clear legislative authority before Administration is found to have the right to pre-empt or amplify the primary agency's responsibility. I do not find and have not been directed to any such authority.
On a more fundamental basis, under the Governmental Reorganization Act of 1969 (Chapter 20, Florida Statutes), Administration has been assigned governmental management functions in the areas of budgeting, personnel, retirement, and planning.[3] Nothing germane to the formation of a department having administrative responsibilities ostensibly designed for the orderly operation of the executive branch of state government suggests to me that its employees have been given inherent or implicit authority to refine employee classifications in other executive agencies by *360 what Administration conceives is or is not "hazardous". To assign that responsibility to Administration would seem to require manpower expenditures to obtain and verify information already within the domain of other executive agencies.[4] The justification for that duplication of effort is not apparent.
My analysis of the statute naturally raises the question of why the Legislature would have required any approval by Administration. My answer is found in paragraph 1 of the rule adopted by Administration to govern its internal approval of applications for special risk membership classification. Rule 22B-1.05C(1) requires the agency to determine that any member certified by one of the covered agencies in fact falls within one of the legislative categories. That, I submit, is a reasonable responsibility for that department, as a check on the managerial procedures of the other agencies. While such a limited role is more than ministerial, it does not allow a discretionary erosion of benefits obtained through legislative act by a co-equal agency of the executive branch.
For these reasons I conclude that the Legislature meant what it said when it placed in the special risk member category "any officer or employee ... who receives salary payments for work performed as a ... correctional agency employee whose duties and responsibilities involve direct contact with inmates, but excluding secretarial and clerical employees... ." I would, therefore, invalidate Rule 22B-1.05C(2) as being in excess of the department's jurisdiction, and I would affirm the decision below.[5]
NOTES
[1] Clearly the Legislature would be within its power to create a broad class of special risk employees for whom retirement benefits would be available, presumably as additional compensation or incentive for hazardous daily activities, even if the duties of some within the class were only occasionally or minimally exposed to employment risks. I know of no reason why such a legislative classification, for retirement benefit purposes, would be subject to judicial invalidation if the classification was otherwise reasonable. Essentially that is what Administration has done with its rule.
[2] For example, the Department of Offender Rehabilitation has a unique ability to identify those of its employees who have contact with institutional inmates and thereby possess statutory eligibility.
[3] See Section 20.31(3), Fla. Stat. (1975).
[4] In denying the special risk applications in this case, Administration wrote to appellees on June 21, 1974 and said:

"Even though you certified that the primary duty and responsibility of the incumbent of the position is to maintain physical custody of prisoners within a prison or detention facility or while being transported, a study of the job description and duties of the various positions does not warrant approval."
[5] Appellant suggests that we must adhere to our prior decision to the effect that state attorneys were subject to the hazardous classifications of Administration. Bross v. State, 277 So.2d 36 (Fla.App. 1st 1973). That case, however, involved state employees in the catch-all clause of the pre-1975 statute, for which hazard was a statutory requisite.