Ulysee FRANKLIN, Plaintiff-Appellant,

v.

G. S. FORTNER, Superintendent, Florida State Prison, et al., Defendants-Appellees.

No. 75–2843.

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1976.

Ulysee Franklin, pro se.

William J. Sheppard (Court-appointed), Jacksonville, Fla., for plaintiff-appellant.

Raymond W. Gearey, Asst. Atty. Gen., Civil Div., Robert L. Shevin, Atty. Gen., Donna H. Stinson, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellees.

Before BROWN, Chief Judge, and TUTTLE and GEE, Circuit Judges.

## PER CURIAM:

Petitioner, Ulysee Franklin, appeals the dismissal of his pro se 42 U.S.C.A. § 1983 complaint alleging Fourteenth and Eighth Amendment violations. The complaint sought declaratory, injunctive and monetary relief against prison officials for transfer from minimum-medium security to maximum security without notice and hearing. It also alleged that the maximum security confinement was served under inhumane conditions. The District Court, in granting summary judgment, expressly without reaching the distinguishable Eighth Amendment claim, held that there was no material factual issue present and that the transfer was a result of a classification change by prison officials. We affirm in part and remand in part for further proceedings.

Franklin's pro se complaint alleges that on June 5, 1974 he was transferred from a minimum security classification in the Florida State Prison to a maximum security lockup in the same prison. He alleges that prison officials effectuated the transfer without providing him the benefit of notice and hearing. An allegation of an Eighth Amendment violation is made in that Franklin claimed he was subjected to cruel and unusual punishment due to the conditions of maximum security.

Prison officials moved for summary judgment and in support thereof submitted an affidavit of K. R. Snover, classification supervisor. The affidavit explained the transfer as being necessary because Franklin was a management problem.[1] Franklin submitted a controverting affidavit stating that the transfer was for punitive reasons and that he never committed any of the violations set forth in Snover's affidavit. This affidavit also attempted to specify the conditions he thought were inhumane while confined in maximum security.[2] The Trial

---

1. The pertinent parts of Snover's affidavit says that:

"On April 23, 1974, while inmate Franklin was housed at the "O" Unit of Florida State Prison he was assigned to the job of Inmate Truck Driver. In June of 1974, inmate Franklin requested a transfer to the Lawtey Vocational Center, however, the same was denied. When advised that his request for transfer was denied inmate Franklin became very belligerent. He was excused from the office until such time as he had calmed down. Within the same week inmate Franklin took the "O" Unit transportation bus and drove to the residence of the then Assistant Superintendent, L. C. McAllister, to discuss his transfer request that had been denied by Classifi-

cation. This action by inmate Franklin resulted in his transfer back to the Main Unit at Florida State Prison and subsequent placement on Close Management June 20, 1974."

\* \* \* \* \* \*

"The reason for his placement in Close Management was that he was in an unauthorized area, used a state vehicle for an unauthorized purpose, and as he had been warned previously about his unauthorized use of a state vehicle. He was considered to be a management problem."

\* \* \* \* \* \*

2. Franklin described the conditions of the maximum security confinement as follows:

"4. Defendant Bingham summarily transferred me from minimum security to maxi-

Judge, finding the transfer to be a result of classification change and that no material factual issue was present, dismissed the complaint on summary judgment.

### Injunctive And Declaratory Relief

■ Franklin does not appeal the dismissal of his claim for injunctive and declaratory relief. Before the case was heard by the District Court, he was transferred from maximum security at Florida State Prison to a less restrictive form of confinement at Cross City Correctional Institution. The Supreme Court's decision in *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) held suits against prison officials seeking injunctive and declaratory relief for being transferred without notice or hearing were moot where the prisoner was returned to less restrictive confinement prior to the District Court's ruling.

### Damages

■■ A fair reading of *Preiser v. Newkirk, supra,* would suggest that class actions or suits for damages under 42 U.S.C.A § 1983 for deficient transfers would not be rendered moot by a return to less restrictive confinement prior to a ruling of the District Court. Thus a claim for damages protects Franklin from the tentacle of *Preiser.* But that does not help him.

Franklin claims that the dismissal by summary judgment of his Fourteenth Amendment claim was improvidently granted. The affidavits of Snover and Franklin are in direct opposition. Franklin's position is that the Court had sufficient facts before it that would raise "the slightest doubt" as to the reason for the transfer. In seeking damages for the alleged violation he asserts that an inmate may collect compensatory damages for a wrongful transfer. Supporting his claim of a wrongful transfer, due to the absence of notice or hearing, Franklin relies on *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The acts complained of here pre-date the *Wolff* decision. The Supreme Court specifically held that retroactivity would not be applied to *Wolff.* That was reaffirmed in *Cox v. Cook*, 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975) where the Court held that the rule announced in *Wolff v. McDonnell* would not support a prisoner's claim for damages for alleged due process violations in placing him in solitary confinement. 420 U.S. at 736–37, 95 S.Ct. 1237. The acts in *Cox* pre-dated *Wolff* and thus the petitioner could not reap the benefits of the decision.

But *Wolff, Cox* and retroactivity to one side, the recent case of *Montanye v. Haymes,* —— U.S. ——, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) and its companion case *Meachum v. Fano,* —— U.S. ——, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) put an end to the claim on its merits. The Supreme Court held:

> [T]hat no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events.

—— U.S. at ——, 96 S.Ct. 2543.[3] On the basis of these cases we hold that the District Court was correct in dismissing this aspect of his claim.

The State of Florida has committed to prison administrators the responsibility of

mum punitive segregation R–Wing. This wing was used to warehouse inmates who were under psychiatric care, death row inmates and inmates on punitive segregation. While on R–Wing I was constantly subjected to physical harm and I underwent great mental pain because many of the inmates under psychiatric care constantly threw urine, excrement, glass, water, fire, other harmful objects and they hardly ever stopped screaming and hollering."

3. *Cf. United States ex rel. Gereau v. Henderson,* 5 Cir., 1976, 526 F.2d 889, in which we left open the question of disciplinary transfers. In our subsequent opinion in *Bruce v. Wade,* 5 Cir., 1976, 537 F.2d 850, we took note of the ramifications of the Supreme Court decisions.

classifying, assigning and transferring prisoners.[4] Pursuant to regulations, promulgated under statutory authority, "transfers are subject to grievance procedures."[5] The grievance procedure, as outlined in the regulations, provides the "inmate with a channel for the administrative settlement of [a] legitimate grievance."[6]

4. At the time the transfer occurred, § 945.09, Florida Statutes Annotated provided as follows:

> **945.09 Commitment of prisoners; Classification; Reception and Classification Center; transfer**
>
> All prisoners sentenced to the state penitentiary shall be committed by the court to the custody of the division and shall be conveyed in the manner provided by law to such institution in the correctional system as the division shall direct. The division shall establish a Reception and Classification Center for male prisoners at Lake Butler. The division shall provide reception and classification facilities for female prisoners at the Florida Correctional Institution at Lowell. Classification facilities shall be provided in the discretion of the division at all institutions in the correctional system. Pursuant to such regulations as the division may provide, the division is authorized to transfer prisoners from one institution to another institution in the correctional system and to reclassify prisoners as circumstances may require.

5. Florida Department of Offender Rehabilitation Rules and Regulations § 10B–15.03 (1975) provided as follows:

> 10B–1503 Transfer of Inmates. Upon completion of the reception center process, each inmate shall be assigned and transferred to the institution which might best facilitate his institutional progress. Inmates may subsequently be transferred from one institution to another. Transfers are subject to grievance procedures.

6. The grievance procedure as set forth in the Florida Department of Offender Rehabilitation Rules and Regulations (1975) provides as follows:

> 10B–1207 Inmate Grievance Procedure. The purpose of this procedure is to provide an inmate with a channel for the administrative settlement of the legitimate grievance. A grievance is a formal complaint concerning an incident, policy, or condition with the institution or the Division of Corrections. Most valid grievances can be resolved quickly through direct contact with the staff of the institution who are responsible for the particular area of the problem. Inmates should be encouraged to use routing informal [sic] remedied prior to initiating a formal grievance. However, when an inmate feels he has sufficient reason to submit an official formal grievance, he should obtain a copy of the request form for administrative remedy or appeal; all facts should be listed accordingly. Only one grievance per form can be initiated.

> (1) The grievance complaint must be filed no later than 30 calendar days from the date on which the basis of the complaint occured, unless it is clearly demonstrated by the inmate that it was not feasible to file within such a period.

> (2) The Assistant Superintendent of the institution will have the grievance complaint logged and will have a receipt sent to the inmate. He may handle the grievance personally or he may designate appropriate staff members to investigate and/or respond. If a staff member investigates and responds, he too will sign the form along with the Assistant Superintendent. The response should state clearly why the grievance is approved or disapproved. If approved it should state what action will be taken to correct the problem. One copy will be placed in the inmate file and two copies will be returned to the inmate advising of action taken.

> (3) When an inmate feels that he may be adversely affected by submission of his grievance at the institutional level because of its sensitive nature he may mail his grievance directly to the Director. He must clearly indicate a valid reason for not initially bringing his complaint to the attention of the institutional staff. Grievances of this type may be sealed in an envelope by the inmate and processed through routine institutional mail channels.

> (4) Institutional officials will have up to 30 days, including holidays and week-ends from the receipt of the grievance to take action and respond to the inmate. When the grievance is, in the opinion of the Assistant Superintendent, of an emergency nature, a reply should be made as soon as possible.

> (5) If the inmate feels his or her grievance has not been satisfactorily resolved at the institutional level, he or she may appeal to the Director. If the inmate files a formal grievance form to the Director the factual basis for appeal must be clearly stated in Part A and a copy of the original grievance and response at the institutional level attached. If the inmate fails to provide a reason for appeal or attach a copy of his institutional grievance and response or the Director feels that the reason supplied is not adequate, the appeal must be returned to the inmate and reasons for return will be specified in Part B. The Director or his designated representative will have a receipt sent to the inmate. He will cause the appeal to be investigated and will have up to 30 days, including week-ends and holidays from receipt of the appeal form to make a response.

The grievance procedure is not structured along the lines of conditions which the prison authorities have to meet before the transfer can be made. It merely affords the inmate a means of gaining review of an administrative determination. As we understand it, the transfer can be immediately executed but the inmate has a right to invoke the grievance procedure.[7]

The Florida Statute does not condition reclassification and transfer on a specific finding of misconduct. The regulations promulgated under the statute, likewise, do not limit transfers to any set of conditions or any finding of misbehavior. On the contrary, the only thing the transfer is conditioned on by the most recent regulations is that it is subject to the grievance procedure. But the grievance procedure itself is not structured to be a condition precedent to action by the administrators.

It is our view that *Montanye v. Haymes, supra* and *Meachum v. Fano, supra* mandate that we hold arrangements like this not to be within the reach of the procedural protections of the Due Process Clause.

*Cruel And Unusual Punishment*

■ With respect to his Eighth Amendment Claim, as to the unconstitutional conditions of confinement after the valid transfer to maximum security, we are satisfied that the complaint was adequate to withstand summary judgment[8] at this time and on this skimpy record. Likewise, his affidavit set forth facts specific enough to show that there was a genuine issue of fact. F.R.Civ.P. 56(e). However, the record before us does not indicate that the District Court reached this independent claim. We therefore vacate so much of the judgment on this limited score for remand to the District Court for further proceedings on this circumscribed Eighth Amendment claim. Obviously, we intimate no predictions on the merits or even as to how far he can get. *See Tyler v. Peel Corp.*, 5 Cir., 1967, 371 F.2d 788. We do not reach the question of personal liability or immunity as to any of the defendants.

AFFIRMED IN PART and VACATED AND REMANDED IN PART.

---

A copy of the response to the inmate will be sent to the Superintendent and a copy filed in the Central Office. The Superintendent's copy will be reviewed and filed in the institutional inmate file. When the time limit cannot be met either at the institutional or divisional level, the time limit may be extended for a reasonable period not to exceed thirty (30) days. If this action is taken the complainant will be notified in writing with the time of extension noted.

(6) A record must be made of each grievance or appeal and should contain at least the following information: Inmate name, prison number, date of receipt, subject of grievance or appeal, disposition of the grievance or repeal, and date of disposition. A copy of this record should be filed monthly in the Superintendent's or the Director's office.

(7) Inmates can be assured that no action will be taken against them resulting from submitting a grievance unless they knowingly and intentionally make a statement which is proven false beyond a reasonable doubt pursuant to disciplinary procedure.

7. From the information we have obtained, 10B–12.07, Inmate Grievance Procedure, was not in effect at Florida State Prison at the time of the transfer, June 5, 1974. We are advised that this portion of the regulations became effective at that facility on July 1, 1974. Although the procedure may not have been technically applicable to the transfer of June 5, 1974, for purposes of our analysis we assume that it is applicable. Our holding would be the same if the procedure had been effective five days before the transfer. The petitioner would not have gotten any benefit out of the procedure on this appeal.

8. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).