**Wayne BROOKS, and all other persons similarly situated, Plaintiffs,**

**v.**

**Louie L. WAINWRIGHT, Individually and as Secretary of the Department of Offender Rehabilitation, Defendant.**

**No. 75–790–Civ–J–S.**

United States District Court, M. D. Florida, Jacksonville Division.

Nov. 11, 1977.

Tobias Simon and Elizabeth deFresne, Miami, Fla., William J. Sheppard, Jacksonville, Fla., Jack Greenberg, New York City, John Stevens, Secretary, United-Union, Inc., Tallahassee, Fla., on behalf of the union intervenor, for plaintiff.

Clarence Holmes, Asst. Atty. Gen., Dept. of Legal Affairs, Civ. Div., Tallahassee, Fla., for defendant.

## OPINION AND ORDER

CHARLES R. SCOTT, Senior District Judge.

### I. FACTS

This case is an off-shoot of *North Carolina Prisoners' Labor Union, Inc. v. Jones*, 409 F.Supp. 937 (E.D.N.C.1976), *rev'd*, —— U.S. ——, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Plaintiff sought a preliminary injunction and defendant requested dismissal on the merits. Both motions, along with numerous other procedural motions,[1] are pending.

Plaintiff was an inmate at Florida State Prison ('FSP') when he commenced this action. He first became an inmate of the State of Florida in 1964. In 1971 he walked away from a Florida, miminum-security road camp in Leon County, and became a fugitive. Later in 1971 he became an inmate of North Carolina until his parole to the custody of the State of Florida, in 1975, to complete his Florida sentence.

While an inmate of the State of North Carolina, plaintiff helped organize, and became the president of, the North Carolina Prisoners Union. Plaintiff's Exhibit 8.

---

1. Other pending motions were motions for certification of a class action; motion for designation of three-judge court; motion for leave to join an additional defendant; motion for leave to amend the complaint and to join additional plaintiffs.

The nature and goals of that organization are described in its constitution and policy statement on goals, (plaintiff's Exhibits 5 and 6), as well as in *North Carolina Prisoners' Labor Union, Inc. v. Jones*, 409 F.Supp. at 940 and n. 1, and *Jones v. North Carolina Prisoners' Labor Union, Inc.*, —— U.S. at ——, 97 S.Ct. at 2536, 53 L.Ed.2d at 636 and n. 1. When he was paroled to the custody of Florida, to complete his Florida sentence, plaintiff brought his organizational ardor and aims with him. While at the central receiving and classification institution of the Florida prison system, plaintiff contacted other inmates about forming a prisoners' organization or association. At that time, plaintiff asked prison officials for a list of all the state prison institutions, and addresses, to enable him to begin organizing the proposed prisoners' association or union. Plaintiff was taken to a conference with prison officials where he explained his ideas and plans. At a second conference, one day later, he showed prison officials the charter, and several newsletters, of the North Carolina prisoners' union. Only a few hours after the second conference, plaintiff was transferred to a medium security institution, Union Correctional Institution ('UCI').

When he arrived at UCI, plaintiff went out to the grounds where he began talking with other inmates about forming a prisoners' organization. Shortly thereafter, plaintiff was placed in solitary confinement pending transfer to FSP, a maximum security institution. At FSP plaintiff remained in solitary confinement, at first pending evaluation, but later at his own request. Prison officials, defendant's agents and employees, have expressed opposition to, and disfavor for, any attempt to organize prisoners of the state into unions or associations.

Plaintiff brought this action alleging (1) the denial of fundamental First Amendment freedoms (of speech and association) and of equal protection of the state's laws by defendant's forbiddance of a prisoners' union or association; and (2) the denial of basic due process in his transfer and custody classification to FSP by defendant. He sought to represent a class of inmates who desired to organize into unions or associations.[2] The Court permitted the United Hotel, Motel, Restaurant and Lounge Employees Union, Inc. ('the Union') to intervene under Fed.R.Civ.P. 24(b). In addition to asserting the First and Fourteenth Amendment claims of plaintiff (and of the possible class members, if the case were certified as a class action), the Union also asserted a claim arising under state law, Fla.Stat. § 447.201 *et seq.* (Supp.1974), known as "The Public Employees Relations Act" ('PERA'). The Union's state law claim was that plaintiff, and the potential members of a certified class of plaintiffs, might well be public employees under the Florida PERA, insofar as they were performing services for state institutions which might be public employers under the PERA. If so, then the right to organize and to bargain collectively, guaranteed by the Florida Constitution, Art. I. § 6, and implemented by the Florida PERA,[3] would apply to state inmates. This pendent jurisdictional claim was raised because it arose from the common nucleus of operative facts that generated the federal claims. *UMW v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–1139, 16 L.Ed.2d 218, 227–29 (1966).

## II. LAW

A. *State Law Claim Under Pendent Jurisdiction.*

■ In 1976, the Florida Legislature enacted session law 76–39, amending Fla.Stat.

---

**2.** Because the Court has never certified this case under Fed.R.Civ.P. 23(a), it is not a class action. *Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1, 96 S.Ct. 1551, 1554 n. 1, 47 L.Ed.2d 810, 817 n. 1 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399 n. 8, 95 S.Ct. 553, 557 n. 8, 42 L.Ed.2d 532 n. 8 (1975); *Young v. Walker*, 435 F.Supp. 1089, 1092 (M.D.Fla.1977).

**3.** Fla.Stat. § 447.201 (Supp.1976) provides in pertinent part:

It is declared that the public policy of the state, and the purpose of this part, is to provide statutory implementation of Section 6, Article I of the Constitution of the State of Florida . . .

§ 447.203 by adding subsection (3)(f) to expressly exclude state inmates from the definition of "public employee." The amendment became effective on May 31, 1976, upon the Governor's approval. When decisional or statutory law is altered, the new, existing law controls pending cases, whether the change occurs after the events that constitute the subject matter of the case, but before trial, *Arick v. McTague*, 292 So.2d 31, 32 (1st D.C.A.Fla.1973); *Ingerson v. State Farm Mut. Auto. Ins. Co.*, 272 So.2d 862, 864 (3d D.C.A.Fla.1973); or even if the change occurs after a final judgment, during an appeal. *FEC Ry. Co. v. Rouse*, 194 So.2d 260, 262 (Fla.1966); *Williams v. Estate of Long*, 338 So.2d 563, 566 (1st D.C.A. Fla.1976); *Richey v. Indian River Shores*, 337 So.2d 410, 414 (4th D.C.A.Fla.1976); *Department of Admin. v. Brown*, 334 So.2d 355, 356 (1st D.C.A.Fla.1976), cert. den. 344 So.2d 323 (Fla.1977); *Stephenson v. Department of Agric. & Consumer Services*, 329 So.2d 373, 375 (1st D.C.A.Fla.1976), aff'd 342 So.2d 60 (Fla.1976); *Rubin v. Randwest Corp.*, 292 So.2d 60, 62 n. 1 (4th D.C.A.Fla. 1974) (Mager, J., dissenting), cert. den. 305 So.2d 786 (Fla.1974); *Van Meter v. Murphy*, 287 So.2d 740, 742 (1st D.C.A.Fla.1973); *Phillips v. Phillips*, 287 So.2d 149, 150 (1st D.C.A.Fla.1973); *R & R Lounge, Inc. v. Wynne*, 286 So.2d 13, 15–16 (1st D.C.A.Fla. 1973); *SCL R. R. Co. v. Campbell*, 285 So.2d 62, 63 (1st D.C.A.Fla.1973).

An amendment to the specific state statute by which pendent jurisdiction is invoked (the Florida PERA, Fla.Stat. § 447.201 *et seq.*) was involved in the decision of *Miami-Dade Community Coll. v. PERC*, 341 So.2d 1054 (1st D.C.A.Fla.1977). Section 447.203 of the PERA, as originally enacted in 1974, and as it became effective on January 1, 1975, established a three-part, disjunctive definition of 'managerial employees.' Managerial employees, are expressly excluded from the definition of 'public employees' under the PERA. When the Commission considered a bargaining unit of public employees at Miami-Dade Community College, the original statutory definition of 'managerial employees' was the current law. On the basis of the evidence presented, the Commission decided that chairpersons and program coordinators (having identical duties and responsibilities) did not meet the definitional criteria of 'managerial employees,' were not excluded from the PERA's application for public employees, and therefore could be included in a bargaining unit. During the community college-public employer's petition for review of the Commission's decision, the Florida Legislature amended the statute, changing the definitional formula for 'managerial employees.' The Florida First District Court of Appeal applied the amended, existing statutory definition to the case on review, 341 So.2d at 1055. In accordance with the new statutory definition, the Court found from the evidence that the chairpersons and program coordinators were managerial employees and therefore not covered by the statute's definition of 'public employees.' *Id.* at 1056.

■ The present case is an even stronger instance of the controlling effect of a change in statutory law upon a pending case. When this case was commenced, state inmates were not mentioned in the PERA's definition of 'public employees.' Fla.Stat. § 447.203(3) (Supp.1975).[4] It was, at best, arguable that state inmates might be included in the statute's definition of 'public employees' if (1) the state prisons should be public employers under the statute, and (2) if the inmates were in any sense 'employed by' the prisons. In 1976, however, the Florida legislature unmistakably expressed its intent to exclude state inmates from the

4. Fla.Stat. § 447.203(3) (Supp.1975) provided:
   (3) "Public employee" means any person, employed by a public employer except:
   (a) Those persons appointed by the governor or elected by the people, agency heads, members of boards and commissions.
   (b) Those persons holding positions by appointment or employment in the organized militia.
   (c) Those individuals acting as negotiating representatives for employer authorities.
   (d) Those persons who are designated as managerial or confidential employees pursuant to criteria contained herein upon application of the public employer to the public employees relations commission.

PERA's coverage for public employees, Fla. Stat. § 447.203(3)(f) (Supp.1976).[5] That law is currently existing and controlling. This Court holds that state inmates are not included under the PERA's provisions because they are excluded from the statute's definition of 'public employees.' The Court, therefore, holds further that plaintiff and the intervenor's assertions of the right of prisoners, under the pendent jurisdiction of the PERA, to organize and bargain collectively, fail as a matter of state law to state a remediable claim. Fed.R.Civ.P. 12(b)(6).

B. *Federal Claims.*

  1. *Denial of Due Process in Transfers and Classifications.*

▮ Plaintiff claims that his transfer from the Reception & Medical Center to UCI, and from UCI to FSP (each a closer and more stringent form of custody), as well as his classification on evaluative confinement, deprived him of liberty without the basic guarantees of due process. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the United States Supreme Court held that, unless state law grants an inmate a substantive interest in a particular institution, classification, or form of custody, he has no liberty interest in such that is guaranteed by the constitution. 427 U.S. 223–25, 96 S.Ct. at 2537–38, 49 L.Ed.2d at 458–59; 427 U.S. at 242–43, 96 S.Ct. at 2546–47, 49 L.Ed.2d at 471–72. Consequently, the Due Process Clause does not guarantee elemental due process when the location or kind of an inmate's confinement is changed by transfer or classification. *Russell v. Oliver*, 552 F.2d 115, 116–17 (4th Cir. 1977); *Four Certain Unnamed Inmates v. Hall*, 550 F.2d 1291, 1292 (1st Cir. 1977); *Lombardo v. Meachum*, 548 F.2d 13, 15–16 (1st Cir. 1977); *Cale v. Paderick*, 546 F.2d 577, 578 (4th Cir. 1976); *Franklin v. Fortner*, 541 F.2d 494, 496, 498 (5th Cir. 1976).

▮▮ The Fifth Circuit, in *Franklin v. Fortner, supra,* found that under Florida law, decisions concerning transfers and classifications of inmates, while subject to regulational grievance procedures, are not contingent upon any set of conditions or justification. 541 F.2d at 497–98. The same regulations and state law to which plaintiff is subject were declared not to confer a property or liberty interest protected by the Due Process Clause. *Id.* at 496–98. Hence, plaintiff's allegation of transfers without due process lacks merit and, as a matter of federal law decided in *Franklin v. Fortner, supra,* fails to state a remediable claim. Fed.R.Civ.P. 12(b)(6).

  2. *Denial of First Amendment Freedoms and of Equal Protection.*

▮ Plaintiff claims that defendant's refusal to permit him to form an association or union of inmates is punitive conduct intended to prohibit plaintiff from exercising First Amendment freedoms. Specifically, plaintiff alleges that his First Amendment liberties of speech and association have been unreasonably infringed without justification. Additionally, plaintiff alleges that defendant's refusal to allow a prisoners' union or association to organize and operate, while allowing other organizations to do so, is arbitrary and capricious, amounting to a denial of equal protection of state law. A ruling on these allegations is controlled by the Supreme Court's decision in *Jones v. North Carolina Prisoners' Labor Union, Inc.,* —— U.S. ——, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).

In *Jones v. North Carolina Prisoners' Union, Inc., supra,* the Supreme Court held that the First Amendment does not restrict prison officials from prohibiting the organization and operation of a prisoners' union or association. —— U.S. at ——, ——, 97 S.Ct. at 2537, 2543–45, 53 L.Ed.2d at 638, 645–46. Although inmates retain those Constitutional freedoms that are not incon-

---

**5.** Fla.Stat. § 447.203(3)(f) (Supp.1976) provides:

  (3) "Public employee" means any person, employed by a public employer except:

  \*   \*   \*   \*   \*   \*

  (f) Those persons who have been convicted of a crime and are inmates confined to institutions within the state.

**1340**

sistent with the realities of incarceration, *id.* at ——, ——, 97 S.Ct. at 2537, 2540, 53 L.Ed.2d at 638, 641, one of the first and most basic freedoms that inmates relinquish is the freedom of association. *Id.* at ——, 97 S.Ct. at 2537, 53 L.Ed.2d at 638. Were it not so, incarceration would be meaningless and impossible, since prisoners could come and go as they pleased under the guise of exercising the First Amendment liberty to association with whom they wished. Obviously, far fewer than the present prison population would choose to continue their association with each other for the duration of their respective sentences.

But prisons are not motels or resorts where inmates can check in or out at their liberty. Neither is a prison a public forum providing open access to citizens to freely express their beliefs. *Id.* at ——, 97 S.Ct. at 2542–44, 53 L.Ed.2d at 644–45. The full range of Constitutional freedoms that ordinary members of society enjoy must be curtailed in order to achieve the legitimate purposes of imprisonment. *Id.* at ——, ——, ——, 97 S.Ct. at 2537, 2540, 2541, 53 L.Ed.2d at 638, 641, 642. So long as the restrictions and limitations are not patently unreasonable, the discretionary decisions of prison officials will be given deference by the courts; *id.* at ——, ——, ——, 97 S.Ct. at 2538, 2539, 2541, 53 L.Ed.2d at 639, 640, 643; and there is no denial of equal protection involved. *Id.* at ——, 97 S.Ct. at 2543, 53 L.Ed.2d at 645.

In the present case, defendant has determined that organizing a prisoners' union or association carries inherent dangers and threats to the internal security of the prison. Furthermore, defendant has prohibited formation of a prisoners' union or association, while permitting civic, religious, and rehabilitative groups, because he has distinguished between the character, goals, and consequences of those organizations and of a purported prisoners' union. Such a distinction is not unreasonable, and the Court will defer to it. The prisons of the State of Florida are not openly accessible to the public to exercise Constitutional freedoms. Those prisons are populated by persons who, in committing criminal offenses, have demonstrated disregard and abuse for the

Constitutionally ordered liberties of all citizens in our democratic society. It is, therefore, not unreasonable for defendant to impose restrictions on the exercise of certain Constitutional rights as a result of the fact and requirements of imprisonment. Neither is it unreasonable for defendant to decide that some activities and organizations are compatible with the realities of confinement, while others are irreconcilable with those realities.

Consequently, the allegations that defendant (1) has infringed plaintiff's First Amendment freedoms, and (2) has deprived plaintiff of equal protection of the law, fail, as a matter of federal law, to state a claim for which the Court could grant relief. Fed.R.Civ.P. 12(b)(6).

## CONCLUSION

Defendant's motion to dismiss will be granted; plaintiff's motion for a preliminary injunction will be denied; and all other pending motions will be denied because they have become moot.