RAWLS, Judge
(dissenting).
I dissent.
Harmon Shields, Executive Director of the Department of Natural Resources, challenges the Retirement Commission’s order denying his application for inclusion in the “special risk” category.
The legislature, in its wisdom, enacted Section 121.021(15), Florida Statutes, which defines “special risk”, inter alia, as any law enforcement officer whose application is approved by the administrator (Director of the Division of Retirement) and who receives salary payments as a law enforcement officer if the duties are certified as hazardous by his employer. Our representative body that is constitutionally[1] charged with the duty of enacting the law of this state enacted Section 370.021(5), Florida Statutes, providing, in part, that the Executive Director of the Department of Natural Resources (Shields) is a law enforcement officer with “full power to investigate and arrest for any violation of laws of this state”, and further conferring upon him and other law enforcement officers in the department broad powers relating to entering upon land or water and to searching boats, motor vehicles and aircraft. Shields’ employer is the Cabinet and the Governor. The six members of the Cabinet, pursuant to the provisions of Section 121.021(15), Florida Statutes, certified to the administrator that Shields’ duties were hazardous and that he met the requirements for special risk membership. In declining to certify Shields’ duties as hazardous, the Governor explained in a letter to the Retirement Commission that: “After full consideration, I concluded that certification for the special risk class should require that the principal activity of the employee be of a law enforcement nature.”
In a letter denying approval of Shields’ application for special risk membership, the administrator quoted the department’s Rule 22B-1.05C[2] in full. In addition, the administrator quoted at length from the official position description of the duties of Executive Director which detailed highly administrative responsibilities and did not mention any law enforcement duties as a part of Shields’ job description. After analyzing the job description and the provisions of the above cited rule, the administrator paid lip service to the statutory job description of the Executive Director, i. e., law enforcement officer, in observing:
“ . . . my attention has been called to . Section 370.021(5), F.S., to include the position of Executive Director of the Department of Natural Resources as a constituted law enforcement officer of this state. However, it does not ap *1241 pear that this could be considered as your primary duty or responsibility. I have also noted the events involving your participation in law enforcement activities but I am unable to conclude that participation in these events is a requirement of your employment. Even if it is required, it does not appear to be one of your primary duties.”
Obviously, the administrator relied primarily upon the rules adopted by his department — not upon the statutory provisions. The cited statutes specifically state “law enforcement officer” and “hazardous” when certified by the applicant’s employer. What the statutory provisions do not prescribe are “job descriptions”, requirement that the member “regularly bear a firearm”, or that a member’s primary duty is to “arrest law violators”. The promulgation of administrative rules does not, as yet.under our system of government, endow administrative agencies the authority to amend legislative enactments. The test of the special risk statute as applied to these facts is quite simple: 1) Is Shields a law enforcement officer?, 2) Have his duties been certified by his employer as hazardous?, and 3) Did the administrator exercise reasonable discretion[3] in administering the statutory provisions relating to special risk membership? The answers to the first and second queries are obviously affirmative. An examination of the record likewise requires an affirmative answer to the third query.
Rule making power of an administrative agency is limited to making rules necessary to carry out the plain language of a legislative act. It is not the prerogative of an agency to amend a legislative act by the device of promulgating rules.[4] The legislature did not say that in order to be certified by his employer as being engaged in “hazardous duties” that the principal activity, of the law enforcement officer must be of a law enforcement nature, or that he regularly bear a firearm, or that his primary duty requires the apprehension of law violators. Insertion of the “primary duty concept” would have not unduly burdened the language of the act if the legislature had so intended. Thus, the purported attempt to amend the act by the rule cannot stand, and, in my opinion, any provisions of Rule 22B-1.05 that are inconsistent with Section 121.021(15), Florida Statutes, must be held to be invalid.
“Hazardous”, as contemplated by the legislature, is a question of fact. As clearly and plainly written by the law making body of this sovereign, the initial responsibility of certifying an applicant’s duties as hazardous is placed upon the shoulders of such applicant’s employer. And such assignment of initial responsibility makes good sense, for it is the employer’s duty to be familiar with the working conditions that are encountered by the employee. This record reveals that Shields, pursuant to his statutory classification as a law enforcement officer, devoted from 20 percent to 40 percent of his time in law enforcement related activities. In performing his statutory law enforcement duties, Shields has assisted in enforcement of shrimping laws and, as a result of this activity, received threats upon his life; U.S. Customs furnishes Shields with a nationwide 24-hour WATS line which he utilizes in coordinating narcotics investigations; he has personally boarded vessels with his officers, one of which was confiscated by U.S. Customs as a result of their efforts; he personally maintains contacts with confidential informants in aiding his narcotics division’s efforts to halt the prolific drug traffic that Florida’s extensive coastline is suffering; and enforcement of shell fish laws in the Key West area, in which Shields has actively participated, has resulted in his life being threatened. That Shields, in performing his duties as a law enforcement officer, has been subjected to hazardous duties as contemplated by the legislature is most evident from this record.
In rejecting Shields’ application for special risk membership, the Retirement Commission placed great emphasis on the provisions of Rule 22B-1.05. In so doing, it properly performed its responsibility, for it *1242 is not the prerogative of the commission to invalidate administrative rules. However, as already alluded to, it is my view that the above rule is invalid in those areas where it clearly conflicts with Sections 121.021(15) and 370.021(5), Florida Statutes. The commission placed great emphasis upon the administrative language of “position description” and apparently rejected the statutory duties of a law enforcement officer placed upon Shields. After considering the applicable statutes and rules, the commission found that Shields’ “primary duties and responsibilities do not require the apprehension and arrest of law violators or suspected law violators”, and this constitutes the basis for the order entered by the commission. In my opinion, the decision of the commission was not in accordance with existing statutes and the valid portion of the rule, and thus was not based on substantial evidence. The manifest weight of the evidence in this record supports approval of Shields’ application for special risk membership as authorized by the law making body of this state.
I would grant the petition for review and quash the order of the Florida Retirement Commission with directions that Shields’ application for special risk membership be approved.

. Article III, Florida Constitution, provides in part: “The legislative power of the state shall be vested in a legislature . . .

. Rule 22B-1.05C, F.A.C., provides:
“C. The criteria which shall be used by the employer and the administrator in determining that a member shall be classified as a special risk member are:
1. It must first be determined that the member falls into the category of peace officer, law enforcement officer ... or any other job in the field of law enforcement or fire protection.
2. Once it is determined that the member falls into one of the categories enumerated in (1), the member’s duties shall be considered hazardous and the member classified as special risk if, in the judgment of the administrator, continued performance of the primary duties and responsibilities of the member beyond the normal retirement age for a special risk member will jeopardize the physical or mental well-being of the member, and at least one of the following statements applies to the member:
a. The duties and responsibilities of the member require that he regularly bear a firearm or other weapon.
b. The member in the performance of his primary duties and responsibilities is required to apprehend and arrest law violators or suspected law violators.
c. The primary duty and responsibility of the member is to maintain physical custody of prisoners within a prison or detention facility or while being transported.
d. The duties and responsibilities of the member require the fighting of fires, other than controlled fires set out for instructional purposes.”

. Department of Administration v. Brown, 334 So.2d 355 (Fla. 1st DCA 1976).

. Lewis v. Florida State Board of Health, 143 So.2d 867 (Fla. 1st DCA 1962).