**Henry J. MITCHELL, Jr.,
Plaintiff-Appellant,**

v.

**Milton R. HICKS et al.,
Defendants-Appellees.**

No. 78–3840.

United States Court of Appeals,
Fifth Circuit.

April 2, 1980.

Peter D. Webster, Jacksonville, Fla., for plaintiff-appellant.

Martin S. Friedman, Shirley A. Walker, Asst. Attys. Gen., Tallahassee, Fla., for defendants-appellees.

Before TUTTLE, BROWN and TATE, Circuit Judges.

TUTTLE, Circuit Judge:

This case is an appeal from an order of the district court for the Middle District of Florida dismissing the plaintiff's pro se 42 U.S.C. § 1983 complaint for failure to state a cause of action. We reverse and remand.

Henry J. Mitchell, Jr. is an inmate at the Florida State Prison. From 1973 until the present time, Mitchell has been confined in various units in prison, including the general population, maximum security, and close management units. The maximum security and close management units are used as housing for inmates placed in segregated

confinement under the prison classification system.

Section 945.09(4) of the Florida Statutes authorizes the Florida Department of Corrections to establish a classification scheme for prisoners:

> Pursuant to such regulations as it may provide, the department is authorized to transfer prisoners from one institution to another institution in the correctional system and to classify and reclassify prisoners as circumstances may require.

Fla.Stat.Ann. § 945.09(4). Pursuant to this authorization, the Florida Department of Corrections issued Policy and Procedure Directive 4.07.20, which sets out rules governing the placement of inmates in "administrative confinement." Administrative confinement is defined as "confinement, other than disciplinary confinement, which results in a loss of some privileges which the inmate would have if assigned to general population." *Id.* Section XII of the directive lists eight reasons for placing inmates in administrative confinement and sets out procedures to be followed prior to placing an inmate in administrative confinement. An inmate may be placed in administrative confinement: (A) awaiting disciplinary action; (B) for investigation; (C) for protection; (D) at his own request; (E) pending trial; (F) in death row cases; (G) if he is a custody risk; or (H) if he has been in disciplinary confinement and appears to the classification team to be potentially disruptive. Section XII then states that, at Florida State Prison, inmates falling under (G) or (H) will be housed under close management status. The procedural rule of directive 4.07.20 requires that, prior to placing an inmate in administrative confinement, a report must be filed, the inmate must be informed of the reason for his reclassification, and any statement that the inmate wishes to make must be included in the report. The report must then be reviewed by the classification team and approved by the Superintendent. This procedure is not required prior to the transfer if the inmate poses an immediate threat of violence or disruption, but must be completed at the earliest practical time.

After this directive was issued, the Florida State Prison Superintendent published Florida State Prison Policy Memorandum Number 33, entitled "Close Management Procedures." Section 33.4 of the memorandum defines close management as follows:

> Close Management is a sub-category of Administrative Confinement and is designed for housing: A. Custody risks who cannot be held in the regular inmate population. B. Inmates who after disciplinary confinement appear to the Classification Team to be potentially assaultive or disruptive and who still cannot reasonably and safely be returned to the regular inmate population.

Section 33.6 of the memorandum, "Assignment To Close Management," states that, before an inmate can be placed on close management status, the case must be reviewed by the classification team. The classification team is to recommend close management status "[i]f it is felt that the inmate's circumstances are consistent with any of the criteria specified in Section 33.4." *Id.* § 33.6.

On September 20, 1978, the plaintiff filed suit under 42 U.S.C. § 1983 against David H. Brierton, superintendent of Florida State Prison, Milton R. Hicks, assistant superintendent in charge of operations at Florida State Prison, and Louis L. Wainwright, Secretary of the Florida Department of Corrections. Mitchell's pro se complaint included the following allegations:

(1) Mitchell was placed in P–Wing, the close management housing area of Florida State Prison, without being informed of the reason for the transfer and without being afforded a hearing to challenge the transfer.

(2) Close management is a subcategory of Administrative Confinement, created by Florida Department of Corrections' Policy and Procedure Directive 4.07.20. The only rationale for using close management status is found in this directive.

(3) By placing the plaintiff in close management without notice and a fair

hearing, the defendants violated the plaintiff's Fourteenth Amendment due process rights.

Seven days after Mitchell's complaint was filed, and without requiring a response from the defendants, the district court entered an order dismissing the case under *Fed.R.Civ.P.* 12(b)(6) for failure to state a claim. The court cited *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), in which the Supreme Court held that the requirements of procedural due process do not apply to transfers of prisoners unless state law creates a justifiable expectation that a prisoner will not be transferred except upon occurrence of certain specified events. Relying on *Franklin v. Fortner,* 541 F.2d 494 (5th Cir. 1976), the court below held that section 945.05 of the Florida Statutes allows prison officials to transfer prisoners "as circumstances may require," and does not condition transfer upon a finding of misconduct or the occurrence of specified events. Thus, Florida prison inmates have no Fourteenth Amendment liberty interest in a particular placement within the prison system. The court stated that "the plaintiff has entirely failed to allege that a recognized 'liberty' interest was taken from him without due process of law."

Mitchell appeals, asserting that the district court erred in dismissing his complaint for failure to state a claim, and urging this Court to hold that the Florida prison directives and regulations discussed above create an expectation that prisoners will not be placed in close management except for the reasons listed. We hold that Mitchell's complaint adequately stated a claim, and remand to the district court for a determination of the second question.

■  Any claim that a prisoner has a federally created liberty interest in remaining in a particular prison or a particular unit within a prison is foreclosed by the Supreme Court's decisions in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49

L.Ed.2d 466 (1976). In *Meachum,* the Court rejected a prisoner's argument that he was entitled to federal procedural due process in connection with his transfer from one prison in Massachusetts to another prison in the state.

> [W]e cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. . . [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.
>
> .    .    .    .    .
>
> Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

427 U.S. at 224–25, 96 S.Ct. at 2538. The Court distinguished *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that a state prisoner is entitled to procedural due process before he is deprived of good-time credits, by noting that the liberty interest involved in *Wolff* was created not by the Constitution but by state statute. 427 U.S. at 224–27, 96 S.Ct. at 2538. The Court considered the procedural protections in *Wolff* necessary to prevent abrogation of the state-created right. "[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the state." *Wolff,* 418 U.S. at 558, 94 S.Ct. at 2976. Looking to state law, the Court in *Meachum* found that Massachusetts prisoners had no state-created liberty interest which would invoke the protections of the Due Process Clause. 427 U.S. at 229, 96 S.Ct. at 2540.

In *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 41 L.Ed.2d 466 (1976), the Court restated the rule established in *Meachum:*

> [N]o Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the state, wheth-

er with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events.

*Montanye*, 427 U.S. at 242, 96 S.Ct. at 2547.

■ *Meachum* and *Montanye* make it clear that a transferred prisoner who claims that he has been deprived of due process must demonstrate that the liberty interest upon which he bases his claim is a creation of state law. This state law entitlement need not be created by statute; it may be rooted in prison rules or regulations or official policies or practices. *Meachum*, 427 U.S. at 229, 96 S.Ct. at 2540; *Cofone v. Manson*, 594 F.2d 934, 939 (2d Cir. 1979); *Arsberry v. Sielaff*, 586 F.2d 37, 46 (7th Cir. 1978); *Durso v. Rowe*, 579 F.2d 1365, 1369 (7th Cir.), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1978); *see Franklin v. Fortner*, 541 F.2d 494, 498 (5th Cir. 1976).

■ We need not, however, determine whether the plaintiff has proved a state-created liberty interest; we need only consider whether the plaintiff's complaint was sufficient to withstand a motion to dismiss. We hold that the complaint, in light of *Meachum* and *Montanye*, adequately and clearly states a cause of action. The complaint alleges that prison regulations set out the only reasons for which prisoners may be placed in close management status; that the plaintiff was transferred to close management without notice or hearing; and that the failure to provide notice or a hearing constitutes a violation of the plaintiff's due process rights. Applying the principle that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Taylor v. Gibson*, 529 F.2d 709, 714 (5th Cir. 1976), it is apparent that the plaintiff's complaint was sufficient. If the plaintiff can prove that Florida prison officials have no discretion to transfer inmates to close management, except for

the reasons enumerated in directive 4.07.20 and policy memorandum 33, and that prison procedures did not provide the process that is due to protect this interest, he will have proved a violation of the due process clause. *See Arsberry v. Sielaff*, 586 F.2d at 48.

The defendants urge, however, that the plaintiff's claim is foreclosed by this Court's decision in *Franklin v. Fortner*, 541 F.2d 494 (5th Cir. 1976). The facts in *Franklin* are very similar to the facts in this case—an inmate in the Florida State Prison filed suit under 42 U.S.C. § 1983, claiming that his transfer from a minimum to a maximum security unit, without notice or a hearing, violated the Fourteenth Amendment. Following the dictates of *Meachum* and *Montanye*, the Court looked to state law to determine the existence of a liberty interest. The Court considered section 945.05 of the Florida Statutes and Florida Department of Offender Rehabilitation Rules and Regulations § 10B—15.03 and § 10B—1207 (1975), and found that the statute and regulations did not condition transfers upon a certain set of conditions or finding of misbehavior. *Franklin*, 541 F.2d at 498. The Court did not consider the regulations or policy statements upon which the plaintiff in this case bases his claim.

We cannot accept the defendants' contention that *Franklin* bars this plaintiff's claim simply because regulations similar to Policy and Procedure Directive 4.07.20 were in effect at the time *Franklin* was decided. The decision in *Franklin* is limited to the statute and regulations considered in that case; it does not hold that no rule, regulation, policy or practice in the state of Florida may create a liberty interest in classification.

The regulatory system to which this plaintiff's complaint refers is very different from the grievance procedure regulations considered in *Franklin*. The inmate grievance procedure merely provided prisoners a method of presenting a complaint to prison officials; the procedure did not limit the discretion of prison officials to transfer inmates, nor did it set out reasons for which inmates could be placed in segregated confinement. No liberty interest is created by

a regulation which is "not structured to be a condition precedent to action by the administrators." *Franklin*, 541 F.2d at 498. The Court's holding in *Franklin* is consistent with the holdings of other courts that no due process clause liberty interest exists where transfer is completely within the discretion of prison officials. *See Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir. 1979); *Twyman v. Crisp*, 584 F.2d 352, 356 (10th Cir. 1978). Policy Directive 4.07.20 and Policy Memorandum 33, however, deal directly with the reasons for which inmates may be placed in administrative confinement. Directive 4.07.20 lists eight reasons for which prisoners may be placed in administrative confinement, and states that, at Florida State Prison, inmates falling under reasons (G) and (H) will be housed in close management. Florida State Prison Policy Memorandum 33 lists two reasons for which an inmate may be placed in close management, and states that the classification team may recommend transfer to close management *if* the inmate falls within either of these criteria. Other courts, in reviewing rules or regulations similar to these, have found that the regulations create a justifiable expectation on the part of inmates that they would remain in the general population unless their conduct came within the reasons listed for transfer. *See Wright v. Enomoto*, 462 F.Supp. 397, 403 (N.D.Cal.1976) (prison regulations defining circumstances under which inmate may be placed in administrative confinement create liberty interest), *affirmed*, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978); *Hoss v. Cuyler*, 452 F.Supp. 256, 289–90 (E.D.Pa.1978) (administrative directive limiting confinement to specific situations establishes liberty interest in reclassification); *Bono v. Saxbe*, 450 F.Supp. 934, 941 (E.D.Ill.1978) (policy statement that transfer is based on "inability to adjust" led prisoners to expect that they would remain in the general population if their behavior conformed); *cf. Lamb v. Hutto*, 467 F.Supp. 562, 566 (E.D.Va.1979) (published procedural standards for pretransfer hearings created liberty interest). *See also Arsberry v. Sielaff*, 586 F.2d 37, 48 (7th Cir. 1978) (suggests that listing of reasons for transfer may create liberty interest).

The plaintiff is entitled to have the district court give these regulations careful scrutiny to determine whether a state-created liberty interest does in fact exist. For this reason, we REVERSE and REMAND to the district court for proceedings not inconsistent with this opinion.