**Clarence QUINN et al., Plaintiffs,**

v.

**Ronald J. MARKS et al., Defendants.**

**Civ. A. No. 80–0460.**

United States District Court,
M. D. Pennsylvania.

Aug. 14, 1980.

Richard G. Fishman, Keystone Legal Services, Inc., State College, Pa., for plaintiffs.

Gregory R. Neuhauser, Deputy Atty. Gen., Francis R. Filipi, Deputy Atty. Gen., Harvey Bartle, III, Acting Atty. Gen., Pennsylvania Dept. of Justice, Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

Before the court is a motion to dismiss the complaint. The complaint was filed by three Pennsylvania state prisoners, formerly at the State Correctional Institution, Huntingdon, Pennsylvania. It charged defendants with violations of the Civil Rights Act, 42 United States Code § 1983. At issue are the procedural rights of Pennsylvania prisoners who are removed from the general population of their prison and placed in administrative segregation.

## FACTUAL BACKGROUND

The complaint alleges the following facts. On December 3, 1978, there was a disturbance at the State Correctional Institution, Huntingdon, Pennsylvania, which resulted in injury to correctional officers and inmates. All inmates were confined to their cells for the remainder of the day. The general inmate population was released from confinement on December 4, 1978. After the disturbance the plaintiffs were segregated in a restricted housing unit. The day after their segregation, Quinn and Reese were charged with assaulting officers and conspiring to disrupt institution routine. They were found guilty of the mis-

conduct charges after a hearing before the Institution Hearing Committee, and were sentenced to six months in disciplinary custody. Upon expiration of their sentences, the prisoners were retained in disciplinary custody for a few days and then transferred to administrative custody to await removal to other institutions.

Plaintiff Collins was similarly charged on December 9, 1978. His hearing was held two days later, whereupon he was advised that there was insufficient evidence to support the misconduct charges against him. His case was continued pending completion of an investigation by the Pennsylvania State Police. At this point the complaint does not state whether Collins was returned to the general population or retained in administrative custody. On March 5, 1979, Collins was charged with assault and riot. Following a hearing held three days later, he was placed in disciplinary custody "with no specific length of confinement being imposed." Complaint, ¶ 34. On May 3, 1979, the Program Review Committee authorized his move to administrative custody pending transfer to another institution.

Plaintiffs claim that their segregation in a restricted housing unit immediately following the disturbance and their confinement in administrative custody following their release from disciplinary custody violated their rights to due process of law. The alleged abridgement of rights is predicated directly on the Due Process Clause of the Fourteenth Amendment to the United States Constitution and upon rights established by Pennsylvania law.

The matter was assigned to a United States Magistrate for consideration and recommendation. His report was filed on June 30, 1980. It recommended that the complaint be dismissed because it failed as a matter of law to plead a deprivation of civil rights. The court agrees with the assessment of the magistrate that, absent the violation of a state law or regulation, the plaintiffs have not pleaded a constitutional violation. However, there are two Pennsylvania regulations which may have been violated. Until the record is clarified, a sum-

mary disposition is not appropriate. For the reasons set forth below, the recommendation of the Magistrate will be rejected.

## PROCEDURAL RIGHTS UNDER THE FOURTEENTH AMENDMENT ABSENT STATE CREATED RIGHTS

Plaintiffs argue that, irrespective of Pennsylvania law, the Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids an intra-prison transfer from general population status to administrative custody without certain procedural safeguards. The procedural safeguards which plaintiffs believe should have been provided are: prior written notice of the reason for the restricted confinement, an opportunity to present evidence or witnesses, counsel substitute, and a written statement of the facts by the fact finder of the evidence relied upon and reasons for the action taken. In support of their position, plaintiffs place considerable reliance on *Wright v. Enomoto*, 462 F.Supp. 397 (N.D. Cal.1976), aff'd 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978), and a prior decision of this court, *Helms v. Hewitt*, Civil No. 79–0950 (M.D.Pa. Nov. 7, 1979). The *Helms v. Hewitt* decision relied on the Supreme Court's affirmance of *Wright v. Enomoto*. However, a more recent Supreme Court decision, *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), indicates that the scope of that affirmance was narrow. Insofar as this opinion is in conflict with this court's earlier decision in *Helms v. Hewitt,* that decision is overruled for the reasons contained in the discussion below.

In *Vitek* the Court recounted:

Following *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), we continued to recognize that state statutes may grant prisoners liberty interests that invoke due process protections when prisoners are transferred to solitary confinement for disciplinary or administrative reasons. *Enomoto v. Wright,* 434 U.S. 1052 [98 S.Ct. 1223, 55 L.Ed.2d 756] (1978), aff'g 462 F.Supp. 397 (N.D.Cal.

1976). *Vitek,* 445 U.S. at 489, 100 S.Ct. at 1261, 63 L.Ed.2d at 562.

The Court stated further in the opinion:

It is also true that changes in the conditions of confinement having a substantial adverse impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him." *Montayne v. Haymes,* 427 U.S., at 242, 96 S.Ct. at 1263. *Vitek,* 445 U.S. at 493, 100 S.Ct. at 1263, 63 L.Ed.2d at 565.

In both *Meachum* and *Montayne,* the transfers at issue were to other prisons. *Meachum* involved an administrative transfer from a medium security institution to a maximum security facility. The Court recognized that imprisonment at a maximum security prison would probably be more burdensome for the plaintiffs than their previous confinement. However, it ruled that such transfers were within the discretion of the state prison officials. Furthermore, it acknowledged the intrusive effect of a decision finding that prison transfers to more restrictive environments implicated protected liberty interests, and stated:

Holding that arrangements like this are within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges. *Meachum,* 427 U.S. at 228–9, 96 S.Ct. at 2540.

*Montayne* unequivocally extended the *Meachum* ruling to disciplinary transfers.

■ *Vitek, Meachum* and *Montayne* lead this court to conclude that intra-prison transfers do not involve a protected liberty interest, even when the transfer will result in more onerous conditions of confinement, unless state law imposes a limitation on the prison officials' discretion to order the transfers. *See Daigle v. Hall,* 564 F.2d 884 (1st Cir. 1977).

## PROCEDURAL RIGHTS UNDER PENNSYLVANIA'S PRISON REGULATIONS

In their exceptions to the report of the Magistrate, plaintiffs claim that their segregation in a restricted housing unit immediately following the December 3, 1978 disturbance, and their transfer to administrative custody once their disciplinary sentences had expired, were in violation of a Pennsylvania Department of Justice regulation governing state correctional institutions. The regulation is found at 37 Pa. Code § 95.104(b)(3), relevant portions providing:

Section 95.104 Behavior control and confinement.

. . . . .

(b) Individual. Individual behavior control and confinement shall conform with the following:

(3) An inmate may be temporarily confined to Close or Maximum Administrative Custody in an investigative status upon approval of the officer in charge of the institution where it has been determined there is a threat of a serious disturbance, or a serious threat to the individual or others. The inmate shall be notified in writing as soon as possible that he is under investigation and that he will receive a hearing if any disciplinary action is being considered after the investigation is completed. An investigation shall begin immediately to determine whether or not a behavior violation has occurred. If no behavior violation has occurred, the inmate must be released as soon as the reason for the security concern has abated but in all cases within ten days.

According to plaintiffs' own statement of the case, Quinn and Reese were charged with behavior violations within a day of the disturbance at the State Correctional Institution at Huntingdon. They were provided with timely hearings, found guilty and sentenced to disciplinary custody. The misconduct report which charged them with the behavior violations, and which they received shortly after their confinement to the restricted housing unit, is a written document informing the inmate of the charges against him. It sets a specific hearing date between twenty-four hours and six days after the prisoner receives the written notice. 37 Pa.Code § 95.103(d). Apparently the involvement of Quinn and Reese in the disturbance was well enough established that it required little, if any, investigation. There was no need in their case to comply with § 95.104(b)(3) above, because they were charged with misconduct violations within a short time after the prison was under control. Thus they were not segregated while investigation to establish possible charges proceeded. It is investigatory confinement which is controlled by the regulation quoted above. The prison authorities had the discretion to confine plaintiffs Quinn and Reese to administrative custody under 37 Pa.Code § 95.104(b)(1) which provides:

An inmate who has allegedly committed a Class I Misconduct may be placed in Close or Maximum Administrative Custody upon approval of the officer in charge of the institution, not routinely, but based upon his assessment of the situation and the need for control pending application of procedures under § 95.103 of this title (relating to procedures).

Since plaintiffs were promptly charged with Class I Misconducts, it is subsection (b)(1) rather than (b)(3) which controlled the actions of the prison officials in this instance.

No claim is made that the procedures before the Institution Hearing Committee violated the rights of Quinn and Reese. The decision as to their prison status after the termination of their disciplinary sentence for prison misconduct was within the discretion of the Program Review Committee. 37 Pa.Code § 95.103(g)(5). The transfer of both inmates to administrative custody pending their removal to another institution and their retention in that status when they arrived at the receiving prison was not in violation of established regulations. Pursuant to the regulation found at 37 Pa.Code § 95.103(g), the Program Review Commit-

tee has wide discretion to decide when a prisoner should be returned to the general prison population. Plaintiffs admit that during their confinement in both disciplinary and administrative custody their status was periodically reviewed by the appropriate officials as the regulations require.

Plaintiff Collins spent six days in the restricted housing unit after the December disturbance before he received a misconduct report. The complaint does not state whether he was informed in writing, pursuant to 37 Pa.Code § 95.104(b)(3), that he was under investigation. It recites only that he did not "receive *prior* written notice of the reasons for said Administrative Custody, an opportunity to present evidence or witnesses in his behalf, counsel substitute or a written statement by the fact finders of evidence relied upon and reasons for the action taken." Complaint, ¶ 38 (emphasis supplied). The prison officials were not bound to provide the quoted items. As long as they were in compliance with their regulations, no deprivation protected by the Due Process Clause of the Fourteenth Amendment occurred. Since the record does not establish what procedure was followed in regard to plaintiff Collins, the court will not rule on whether he suffered a civil rights violation until the record is enlarged.

In the exceptions to the report of the Magistrate, ¶ 9, it is claimed that: "The disciplinary sentences for misconduct given Plaintiffs failed to comport with 37 Pa.Code § 95.103(f). . . ." The portion of that regulation at issue is subsection (f)(2)(iii) which provides:

(f) The Hearing Committee may take the following actions:

. . . . .

(2) In cases where the violation is proved and constitutes a Class 1 Misconduct: [1]

. . . . .

(iii) Change cell assignment including placement in Close or Maximum Disciplinary Custody. Such placement will be reviewed weekly by the Program

Review Committee as provided for in subsection (g) of this section and shall have a specified maximum duration for each misconduct not to exceed six months.

Before this court can evaluate whether there was a violation of the disciplinary sentencing regulation, the parties must develop the record regarding these facts. The complaint states that Quinn and Reese were kept in disciplinary custody following the termination of their six month sentence. It alleges that Collins was placed in disciplinary custody "with no specific length of confinement in this status being imposed." Complaint, ¶ 34.

■ The parties should proceed with discovery on the issues related to violations of Pennsylvania law as it relates to the sentences served in disciplinary custody. Since the facts of plaintiff Collins' confinement in the restricted housing unit following the December incident are not clear, the court will consider whether his retention in administrative custody abrogated rights secured by the prison regulations.

■ There was no violation of the Due Process Clause of the Fourteenth Amendment in the procedures followed when Plaintiffs Quinn and Reese were placed in administrative custody following the prison incident in December. Nor were the rights of any of the plaintiffs violated because they were not released to the general prison population following the completion of their disciplinary sentences. Accordingly, the allegations addressing those matters will be stricken.

---

1. All three plaintiffs were charged with Class 1 Misconducts.