Charles B. KNAPP, Plaintiff,

v.

Crispus NIX, et al., Defendants.

Civ. No. 83–56–B.

United States District Court,
S.D. Iowa, C.D.

Dec. 16, 1983.

Charles B. Knapp, pro se.

Thomas J. Miller, Atty. Gen., State of Iowa, Gordon E. Allen and Patricia Mullen Hulting, Asst. Attys. Gen., Des Moines, Iowa, for defendants.

RULING AND ORDER OF DISMISSAL.

VIETOR, District Judge.

The court has before it defendants' motion for summary judgment on all issues in this case. Plaintiff has resisted and the motion is fully submitted.

Plaintiff complains of custody classification evaluations made by defendants, claiming that the evaluations did not properly follow the Inmate Custody Classification Criteria. Plaintiff alleges that the actions of defendants, which he describes as arbitrary and capricious, violated his rights to due process and equal protection of the law.

The court will consider briefly the equal protection claim before turning to the more serious due process claim. A review of the evidence and the pleadings in this action demonstrates that plaintiff has failed to allege or prove a prima facie case of an equal protection violation, as he does not plead nor do the facts indicate that he has been treated differently than other inmates similarly situated. Plaintiff's equal protection claim is without merit.

Turning to the due process claim, the court is confronted with the arguments of

both sides concerning the factual merits of the disputed classification. Although neither party has thoroughly briefed the issue, the court finds that it is clear that no due process rights are at stake here, and that therefore the inquiry plaintiff wishes to pursue is unwarranted.

■ As background to the due process analysis, the court notes that while the custody classification evidently serves other institutional needs, its principal purpose is to aid in the determination of the facility to which an inmate should be assigned. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Court confronted the question whether the decision to assign an inmate to a given institution implicated a liberty interest protected by the due process clause. The Court stated:

> The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

*Id.* at 224, 96 S.Ct. at 2538 (emphasis original). In the decision in *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Court relied on *Meachum* in noting, in response to the plaintiff's claim that a pending detainer adversely affected his prison classification, that no due process inquiry was required of prisoner classification decisions. "We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right." *Id.* at 88 n. 9, 97 S.Ct. at 279 n. 9.

There are, however, two circumstances in which a classification decision may be subject to scrutiny under the due process clause. The first is when the decision infringes some independently protected constitutional right. In *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Court held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him *and is not otherwise violative of the Constitution,* the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at 242, 96 S.Ct. at 2547 (emphasis added). Such rights may have their origins, for example, in the First Amendment, *see Martinez v. Oswald*, 425 F.Supp. 112, 115 (W.D.N.Y.1977) (transfer of prisoner because of statements to the press), or in the right to access to the courts, *see Garland v. Polley*, 594 F.2d 1220, 1222–23 (8th Cir. 1979) (claim that reason for transfer was filing of civil rights complaints by inmate). None of the facts alleged by plaintiff or otherwise appearing from the evidence before the court indicates that defendants' conduct had the effect of infringing a substantive constitutional right.

The second situation in which a due process review of a classification decision may be called for is when the state has created a protected liberty interest in an inmate by placing statutory or regulatory limits on the discretion of corrections officials to make custody assignment decisions. In *Meachum* the Court recognized that such a liberty interest arises when state law creates an expectation that prison transfers will occur only upon "the occurrence of specified events." *Meachum v. Fano, supra,* 427 U.S. at 226–27, 96 S.Ct. at 2539. Of similar effect is the companion case of *Montanye*, in which an inmate was held to have "no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct." *Montanye v. Haymes, supra,* 427 U.S. at 243, 96 S.Ct. at 2547. The Court therefore found that in neither case was there a basis under state law for invoking the protections of the due process clause. *Meachum v. Fano, supra,* 427 U.S. at 228, 96 S.Ct. at

2540; *Montanye v. Haymes, supra,* 427 U.S. at 243, 96 S.Ct. at 2547.

The Court has not failed to find a state-created liberty interest on all occasions, however. In *Vitek v. Jones,* 445 U.S. 480, 489–90, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980), the Court held that a statute prohibiting the transfer of a prisoner to a mental institution absent a finding that he suffered from a mental disease or defect gave rise to a constitutionally protected liberty interest. In its most recent statement regarding a state-created liberty interest, the Court found that a Pennsylvania statutory and regulatory structure controlling the placement of inmates into administrative segregation established "substantive predicates" to such decisions, giving a basis for due process protection. *Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). The rationale for its decision was discussed at length:

> Respondent seems to suggest that the mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation indicates the existence of a protected liberty interest. We cannot agree. * * The adoption of such procedural guidelines, without more, suggests that it is these restrictions alone, and not those federal courts might also impose under the Fourteenth Amendment, that the State chose to require.
>
> Nonetheless, in this case the Commonwealth has gone beyond simple procedural guidelines. It has used language of an unmistakable mandatory character, requiring that certain procedures "shall," "will," or "must" be employed * * * and that administrative segregation will not occur absent specified substantive predicates * * *. [W]e are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest. ·

*Id.* Though *Hewitt,* of course, did not address the question of custody classification decisions, the Court clearly considered its analysis applicable to all procedural guidelines that channel the decision-making of prison officials. *See id.* 103 S.Ct. at 869–71.

■ Applying the *Hewitt* analysis to the Iowa procedural framework, the court finds nothing which establishes the substantive predicate to a particular custody classification, and no language mandating adherence to the specified criteria. The Iowa statute governing confinement decisions gives complete discretion to corrections officials:

> The director of the division of adult corrections shall determine the appropriate place of confinement of any person committed to the director's custody, in any institution administered by the director, and may transfer the person from one institution to another during the person's period of confinement.

Iowa Code § 902.5 (1983). Notwithstanding the free hand given by the statute, another potential source of guidelines is the Iowa Administrative Code. A review by the court of the Code's provisions, however, reveals nothing governing institutional assignments.

As a final possible source of discretionary limitations, the court turns to the Inmate Custody Classification Criteria issued by the Iowa Division of Adult Corrections of the Social Service Department. Although it is arguable that guidelines issued by the very agency whose discretion they govern cannot create the substantive predicates demanded by *Hewitt,* the court finds that it need not decide this point. Even assuming the director is bound by his own procedures, there is none of the language of "unmistakably mandatory character" identified by *Hewitt* as creating an expectation of liberty. The "user's manual for inmate custody classification" in fact clearly states that the "standard custody criteria may be subject to override by professional staff for documented cause." It further urges the user to "exercise discretion and judgment * * *. There should be no hesitancy to increase or reduce custody by exception when there are individual custo-

dy situations that require such actions." It is also noted that the classification criteria is "merely a tool," and that the ultimate custodial classification is the product of the professional judgment of the classification team. Far from creating substantive predicates to a particular classification decision, the procedural guidelines evince a purpose to delegate the discretion possessed by the director to his subordinates, and reveal a clear effort to avoid creating mandatory results. There is no justifiable expectation of a specific result created in the inmate, and consequently there is present here no liberty interest protected by due process. Defendants' motion must be granted.

Several other motions are pending in this action. As a result of the disposition of the instant motion, the remaining motions are moot and require no ruling.

IT IS ORDERED that defendants' motion for summary judgment is granted, and that the complaint is dismissed.