14 F.3d 600
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Abu-Dawud EL-AMIN, Plaintiff-Appellant,
v.
Sgt. PETERSON, et al. Defendants-Appellees.
 No. 92-1904.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1993.
 
 Before: MARTIN and RYAN, Circuit Judges; and MATIA, District Judge*
 PER CURIAM.
 
 
 1
 Appellant, Abu-Dawud El-Amin, is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). Appellant filed a prisoner civil rights suit pursuant to 42 U.S.C. Section 1983 against defendants-appellees, Sgt. Peterson, Sgt. Stevenson, Assistant Deputy Warden Truedell (sic) and Sgt. Lantis. Appellees are employees of the MDOC. The district court granted appellees' motion for summary judgment on the merits and dismissed the case. Appellant timely appealed the order of dismissal.
 
 
 2
 Two issues are presented by appellant for our review. First, whether appellant was placed in "administrative segregation" without a hearing in violation of his due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States. Appellant argues that appellee Truedell violated his constitutional rights by putting him in segregation or "toplock" on days two through eleven of his stay at the Reception and Guidance Center ("RGC"). Second, whether appellant was denied necessary medical care due to appellee Lantis' willful indifference to his acute hypertension and chronic arthritis in violation of his rights under the Eighth Amendment to the U.S. Constitution. Appellant contends that appellee Lantis refused to adhere to the medical restrictions recommended by the medical department staff and LPN Remensnyder in particular. For the reasons that follow, we affirm.
 
 
 3
 * The relevant facts giving rise to appellant's claims are not in dispute. Appellant arrived at the RGC, an MDOC facility, from the Wayne County jail on March 1, 1988, and sometime after 1:00 p.m. was assigned a cell. The RGC is the first stop for all newly committed prisoners, at which they undergo physical, mental and psychological examinations and are classified as to security and management levels. They are then transferred to another MDOC correctional facility within the State of Michigan. A prisoner stays at the RGC an average of thirty days.
 
 
 4
 An incident report was provided to the RGC by the Wayne County jail. It categorized appellant's behavior while in custody there as "inciting inmates" and stated that he was having trouble with another inmate, i.e., appellant was threatening to assault the inmate if he was placed in proximity to appellant.
 
 
 5
 On March 2, 1988, appellant was placed in a maximum supervision cell in the top tier of cells in Block Six (known as "Top-6") at the RGC. Lt. Borton, who was not named as a defendant, noted the status of appellant in the Lieutenant's Log Book. The only differences in treatment between those coming into the system as newly committed prisoners and prisoners in maximum supervision are that the latter are fed in their cells and go to a more closely supervised exercise yard with one of three different groups. The cells are identical to all other cells, and in fact the number of maximum supervision cells expanded or contracted according to demand. The medical records, the Top-6 Log Book and the deposition testimony of LPN Remensnyder and Sgt. Peterson show that appellant was not confined to his cell and that he left his cell for processing, appointments and medical testing and treatment. Appellant remained in Top-6 until March 11, 1988, when he was removed for an orthopedic screening. Thereafter, he was moved to Six Block and then reassigned to a cell on "base" (the first level of the cell block) which was not in the maximum supervision area.
 
 
 6
 Appellant maintained that he was not given enough time by appellee Lantis to get back to his cell after meals despite a request from him as well as LPN Remensnyder that appellant be allowed extra time in the chow line. This problem apparently did not arise until sometime after March 11, 1988 and continued until at least March 24, 1988. On March 11, 1988, appellant was screened by Physicians Assistant Sponseller in the orthopedic clinic. He was given a knee support for his right knee "to help with bracing, especially going up and down steps." On March 21, 1988, LPN Remensnyder wrote in the progress notes of the medical records and probably also suggested to appellees that appellant be allowed more time in the chow line.
 
 
 7
 On March 23, 1988, appellee Lantis conducted a hearing on a minor misconduct ticket issued to appellant for being "out-of-place." Appellant received the ticket for failing to timely return to his cell after a meal. At the hearing, appellant showed Lantis the medical recommendation that he should be allowed more time at meals. Lantis disregarded the medical recommendation, found appellant guilty, and sentenced him to three days in administrative segregation.
 
 
 8
 Later that same day, appellant fell and injured himself rushing back to his cell. He was taken to the emergency room at 2:30 p.m. Appellee Lantis, however, had left work at 1:30 p.m. on that day. The next day, appellant was assigned a cell on "base" to aid him in getting to meals in a timely fashion and also to avoid having to take the stairs in the process.
 
 II
 
 9
 As to the first issue raised, a prisoner has no independent constitutional right to a particular institutional classification or placement, and the Due Process Clause does not require that he be given a hearing before any change is ordered, even if such action might result in confinement under less desirable or favorable conditions. Meachum v. Fano, 427 U.S. 215, 224-25, 96 S.Ct. 2532, 2538 (1976); Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547 (1976). He has no constitutional right to remain in the general prison population. Bills v. Henderson, 631 F.2d 1287, 1291 (6th Cir.1980). However, a constitutionally protected liberty interest may be created by state statutes, regulations or procedural provisions. Hewitt v. Helms, 459 U.S. 460, 470-71, 103 S.Ct. 864, 870-71 (1983); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir.1986).
 
 
 10
 We find that the treatment of appellant and his movements between March 2-11, 1988 from location to location within the RGC for processing, appointments and medical testing and treatment lead to the conclusion that he was not in "administrative segregation" as that term is defined by the MDOC policy directive.[1] Therefore, no disciplinary hearing was required for the way in which he spent his time at the RGC from March 2-11, 1988.
 
 III
 
 11
 With regard to the second issue raised by appellant, the lower court concluded that appellee Lantis was not deliberately indifferent to appellant's serious medical needs. In reaching this conclusion, the magistrate judge stated:
 
 
 12
 By merely finding [appellant] guilty of the charged offense, it cannot be said that [Lantis] was deliberately indifferent to any serious medical needs or that his actions were obdurate or wanton.
 
 
 13
 Joint Appendix 319.
 
 
 14
 The Supreme Court and the Sixth Circuit have plainly established that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976); Westlake v. Lucas, 537 F.2d 857 (6th Cir.1976). This action has both an objective component, that appellant's needs were sufficiently serious, and a subjective component, that appellees were deliberately indifferent to these needs. See Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321 (1991); Hunt v. Reynolds, 974 F.2d 734 (6th Cir.1992). Appellant has not shown that appellee Lantis possessed the requisite mental state for deliberate indifference.
 
 
 15
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 PD-BCF-60.01 defines "administrative segregation" as follows:
 The highest level of custody which allows very limited prisoner movements and requires prisoners to spend most of their time locked in their cell or room.