ALD-257                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4419
_____

EDWARD J. FORD, JR.,
                                        Appellant

v.

BUREAU OF PRISONS; H.L. HUFFORD,
Warden, F.C.I. Schuylkill; ROMAN, Associate Warden, F.C.I.
Schuylkill (Programs); CASTENEDA, Associate Warden, F.C.I.
Schuylkill (Custody); CAPTAIN B. TAGGARD; P. WEIDMAN,
Chaplin; LT. HENSEL; LT. T. REISINGER, S.I.S.; R. SCANDLE,
Acting Disciplinary Hearing Officer; UNKNOWN BUREAU OF PRISONS
EMPLOYEES AT THE NORTHEAST, SOUTHEAST REGIONAL OFFICES;
THE CENTRAL OFFICE; Administrative Remedy Coordinators
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 3-12-cv-00873)
District Judge: Honorable William J. Nealon, Jr.
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 12, 2014

Before: RENDELL, FISHER and GREENAWAY, JR., Circuit Judges

(Opinion filed: June 30, 2014)
_____

OPINION
_____

PER CURIAM

Appellant Edward Ford, Jr., a federal prisoner, appeals from an order of the District Court granting the defendants' motion to dismiss or for summary judgment. For the reasons that follow, we will summarily affirm.

Ford filed a civil rights action, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), in the United States District Court for the Middle District of Pennsylvania against numerous officials and employees of the Federal Bureau of Prisons. In the main, he alleged that prison officials violated his First Amendment right to the free exercise of his Nation of Islam religion, and he also alleged a violation of the Religious Freedom Restoration Act. Ford claimed that, while incarcerated at the Federal Correctional Institution in Minersville, Pennsylvania ("FCI Schuylkill"), the defendants failed to provide him with a meal after he had fasted from sunrise to sundown on two Holy Days, October 7, 2010 and October 16, 2010. Ford also alleged in his complaint that the defendants violated the First Amendment when, following his rightful pursuit of an administrative remedy through the prison grievance system relating to the meal issue, they retaliated against him by charging him with a misconduct for Engaging in or Encouraging a Group Demonstration and Conduct Disruptive to Security/Orderly Running of the prison after he gave a sermon to fellow Nation of Islam inmates. Ford was adjudicated guilty of the misconduct and sanctioned to disciplinary confinement for 30 days, loss of telephone and visitation privileges, and a disciplinary transfer to a BOP institution in Florida, far from his family. Ford sought money damages and injunctive relief.

2

The defendants moved to dismiss the complaint, Fed. R. Civ. Pro. 12(b)(6), or, in the alternative, for summary judgment, Fed. R. Civ. Pro. 56(a).  The defendants argued that Ford failed to fully exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), that certain of the defendants had no personal involvement in the alleged wrongs, and that Ford failed to establish any violations of his constitutional or statutory rights, among other arguments.  In support of the motion, the defendants submitted affidavits and certain exhibits, including Ford's grievances, the Disciplinary Hearing Report and Incident Report relating to his misconduct, and certain items explaining the BOP's policies relating to recognized Nation of Islam Holy Days and Nation of Islam required days of fasting.  One exhibit, Program Statement 5360, indicated that the BOP recognizes the Nation of Islam's three Holy Days, and grants work proscription for all three days.  However, not all Holy Days for which work proscription is granted are recognized as required days of fast, and so a special meal at the conclusion of the day of fast is not provided.  In addition to the Holy Day of Atonement, Ramadan is considered a required fast day for Nation of Islam faith groups, but other fasts are considered personal in nature and so meals are not provided at the end of the fast.  Accordingly, the BOP provides a meal after sundown for those who have fasted on the Day of Atonement and on Ramadan, but does not provide the meal for those who have fasted on Elijah Muhammad's Birthday.  The BOP's affidavits and exhibits showed that Ford was granted work proscription on both the Holy Day of Atonement and the Holy Day of Elijah Muhammad's Birthday in 2010, and that he was given a meal on October 16 after sundown in accordance with BOP policy but did not pick it up.

3

Another of the defendants' exhibits, the Incident Report issued to Ford on November 4, 2010, stated that Ford gave a sermon in the prison Chapel on October 29, 2010, and stated during the sermon, "I'm going to fight the white man to death; the white man trying to take away our blackness; why do we look to the white man to tell us what to do; if we come together we can change the reality of slavery; and I ain't gonna lay down, we got to come together brothers." The statements were reported to defendant Lieutenant Reisinger by defendant Chaplain Weidman, and a misconduct followed. The Disciplinary Hearing Report stated that Ford was advised of his rights prior to his hearing, that he understood them, that he waived them, and that he stated: "I made a mistake getting up there and speaking." In response to the charge that his sermon was radical and racially motivated, he answered that his statements were taken out of context. The hearing officer, defendant R. Scandle, concluded that Ford's sermon was disruptive to the security of the prison, that his sermon was negatively intended, and that, among other things, he required greater supervision and a transfer to a higher-security prison.

Ford submitted a written response in opposition to the defendants' motion. Ford acknowledged that some of his claims were unexhausted but he argued that the BOP's Regional Office rejected certain of his appeals on arbitrary procedural grounds, and that the rejection of his appeals was part of a conspiracy to retaliate against him.

In an order entered on October 11, 2103, the District Court, after thoroughly addressing on the merits each and every conceivable claim raised in the complaint, granted the defendants' motion and awarded judgment to the defendants. Ford submitted a motion for reconsideration, which the District Court denied in an order entered on April 8, 2014.

4

Ford appeals.  We have jurisdiction pursuant to 28 US.C. § 1291.  Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6.  He was invited to submit argument in writing, and he has done so.  We have considered his submissions.

We will summarily affirm the order of the District Court because no substantial question is presented by this appeal, Third Circuit LAR 27.4 and I.O.P. 10.6.  Inmates have a First Amendment right to the free exercise of their religions, but imprisonment necessarily results in some restrictions on the practice of religion.  O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987).  Limits on the free exercise of religion arise from valid penological objectives, including deterrence of crime, rehabilitation of prisoners, and institutional security.  See id. at 348.  Under the First Amendment, regulations or policies that infringe upon an inmate's right to religious freedom need only pass a reasonableness test.  Turner v. Safley, 482 U.S. 78, 89 (1987).  Prisons must, however, accommodate a inmate's sincerely held beliefs regarding his need for a particular diet.  See DeHart v. Horn, 227 F.3d 47, 52 (3d Cir. 2000).

The Religious Freedom Restoration Act provides that the "Government shall not substantially burden a person's exercise of religion [unless] it demonstrates that application of the burden to the person -- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1.  We have held that a substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally acceptable to other inmates versus

5

abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. See Washington v. Klem, 497 F.3d 272, 280 (3d Cir.2007) (interpreting similar standard under Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)). It is only once a substantial burden on religion has been established by the inmate that the government must then establish "that it has a 'compelling interest' in its actions and is furthering that interest by the 'least restrictive means.'" Small v. Lehman, 98 F.3d 762, 767 (3d Cir. 1996), overruled on other grounds by City of Boerne, 521 U.S. 507 (1997).

Applying the above principles, the District Court properly concluded that the BOP did not violate Ford's First Amendment free exercise rights. He did not allege that he was denied a reasonable opportunity to participate in Nation of Islam religious meetings and activities, nor would the record have supported such an assertion. Nation of Islam practices plainly are recognized at FCI Schuylkill. Moreover, inmates who are approved for special dietary meals, as Ford was, are served meals that do not violate their religious tenets. The brief disruption to Ford's special dietary meals was caused by his personal decision to fast, and he thus failed to show that a material factual dispute existed with respect to whether the diet that was provided to him by prison officials violated his religious beliefs, or was even in some way insufficient to sustain him in good health, see Fed. R. Civ. Pro. 56(a) (summary judgment proper where summary judgment record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law"). Insofar as the prison supplies a meal following required fasts, there were no BOP regulations or policies that infringed on Ford's ability

6

to participate in the practice of his Nation of Islam beliefs at FCI Schuylkill.  Cf. Turner, 482 U.S. at 89-91 (right to free exercise not violated where prisoner has alternative means of exercising right).

With respect to the Religious Freedom Restoration Act, which grants more expansive rights, the District Court properly concluded that Ford did not show a substantial burden on the exercise of his religion from the challenged BOP policy. Again, even accepting as true Ford's allegation that he was deprived of two meals – one after sundown on October 7, 2010 and one after sundown on October 16, 2010 – no statutory right of his was violated.  Ford was not actually prevented from exercising his religion; he was given the opportunity to observe both Holy Days, and to fast.  Moreover, the defendants established through their exhibits and affidavits that the BOP recognizes the Nation of Islam's three Holy Days, grants work proscription for all three days, and provides a meal after sundown for those who have fasted on Ramadan and the Day of Atonement.  Ford did not, in opposing the defendants' motion for summary judgment, show by affidavit or other evidence that fasting on Elijah Muhammad's birthday is required.  Fed. R. Civ. Pro. 56(e)(3).  At most, Ford missed his post-fast meal on two occasions,[1] but he did not allege that his usual meals did not resume the following morning, that his health was damaged in some way by the missed meals, or that prison staff coerced him into violating any of his religious beliefs regarding personal fasting by

---

[1] That said, in our view, Ford did not adequately rebut, through affidavits or other evidence, the defendants' showing that a bagged meal was indeed provided for him on October 16, 2010, and that he failed to pick it up.  Fed. R. Civ. Pro. 56(e)(3) (if nonmoving party "fails to properly support assertion of fact or fails to properly address another's party's assertion of fact … the court may *** grant summary judgment" to moving party).

7

depriving him of a proper diet. Accordingly, summary judgment for the defendants on the issue of whether the burden imposed by the missed meals was substantial and violated the Religious Freedom Restoration Act was proper.

With respect to Ford's procedural due process claim, the safeguards of the Due Process Clause are triggered only when a protected interest is at stake. See Meachum v. Fano, 427 U.S. 215, 223-24 (1976). Under Sandin v. Conner, 515 U.S. 472 (1995), protected liberty interests are generally limited to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484. The determination of what is "atypical and significant" is based on the range of conditions an inmate would reasonably expect to encounter, see Asquith v. Dep't of Corrections, 186 F.3d 407, 412 (3d Cir. 1999). The sanctions imposed on Ford as a result of the misconduct are within the range of conditions he would reasonably expect to encounter. We note in particular that a prisoner has no liberty interest in a particular housing location or custody level while under the jurisdiction of correctional authorities. Meachum v. Fano, U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Olim v. Wakinekona, 461 U.S. 238 (1983). Thus, the procedural due process safeguards, see Wolff v. McDonnell, 418 U.S. 539, 556 (1974), were not triggered here.[2]

A prisoner alleging retaliation in violation of the First Amendment must show (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by prison officials sufficient to deter him from exercising his constitutional rights; and (3) that there is a causal link between the exercise of his

_____

[2] In any event, there do not appear to have been any deficiencies in the procedures made available to Ford by prison officials.

8

constitutional rights and the adverse action taken against him. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). With respect to the required causal link, if the prisoner makes a prima facie showing that his constitutionally protected conduct was a motivating factor in the decision to discipline him, the burden then shifts to the defendant to show that it would have taken the same disciplinary action even in the absence of the protected activity. See id. at 334. The record here is devoid of any material facts to show that the defendants conspired to retaliate against Ford for filing a grievance against staff. The record demonstrates that Ford had ample access to the prison grievance system. Even accepting as true Ford's allegation that the BOP's procedural requirements are arbitrary, it is of no consequence here, because the District Court did not dismiss Ford's claims for failure to exhaust administrative remedies.

With respect specifically to the misconduct that was issued following Ford's sermon, Engaging in or Encouraging a Group Demonstration and Conduct Disruptive to Security/Orderly Running, the administrative record shows that Ford's defense was to argue that his statements were taken out of context. In addition, in his written argument on appeal, he claims that Chaplain Weidman is known for being vindictive, that a Chaplain should not be acting as a spy for prison officials, and that his sermon was proper comment on a matter of public concern. We have carefully reviewed the administrative record. Chaplain Weidman's November 3, 2010 Memorandum addressed to Lieutenant Reisinger supplies the context for Ford's sermon; the racial and radical aspects of the sermon are readily apparent. Ford's argument that his sermon was proper comment on a social issue ignores that prison officials may place limits on an inmate's free exercise of his religion where the limits advance the valid penological objective of

9

institutional security.  <u>O'Lone</u>, 482 U.S. at 348.  Moreover, Ford had a full and fair opportunity to present this defense at his misconduct hearing.  The Hearing Examiner rejected Ford's proffered defense, and we see no evidence of bias in his decision-making.  Nothing in the record suggests that the misconduct demonstrated a retaliatory motive, was fabricated for some other unlawful purpose, or was unsupported by the evidence.  <u>Cf.</u> <u>Superintendent v. Hill</u>, 472 U.S. 445-46 (1985) (disciplinary adjudication of guilt upheld where there is "any evidence in the record that could support the conclusion reached by the disciplinary board").  We thus conclude that the defendants met their burden to show that they would have taken the same disciplinary action against Ford even in the absence of his having filed a grievance relating to the failure to provide him with meals on October 7 and October 16, or to any of his other grievances.  <u>See</u> <u>Rauser</u>, 241 F.3d at 334.

Last, we conclude that the sum total of the allegations in Ford's complaint do not support any other actionable claims that have merit, for the reasons given by the District Court.

For the foregoing reasons, we will summarily affirm the order of the District Court granting the defendants' motion and awarding judgment to the defendants.